No. 3505

Second Circuit

WEAVER BROTHERS v. TEXAS &
PACIFIC RAILWAY COMPANY

(July 1, 1929. Opinion and Decree.)
(October 1, 1929. Rehearing Refused.)

Cook & Cook, and C. D. Egan, of Shreveport, attorneys for plaintiffs, appellees.

Wise, Randolph, Rendall & Freyer, of Shreveport, attorneys for defendant, appellant.

ODOM, J. Plaintiffs purchased a drilling rig from the Louisiana Iron & Supply Company, in Shreveport, to be shipped over defendant's line of railroad to Weaver's Spur, in Natchitoches parish; a distance of approximately 100 miles. The drilling rig consisted of a boiler, about 2,000 feet of 4-inch and 500 feet of 2-inch iron piping, together with various and sundry fixtures, attachments, and tools, including 10 4-inch "Hughes tool joints." The outfit was loaded on a flat car in Shreveport at the supply house of the Louisiana Iron & Supply Company, which is located on the switch track of the Yazoo & Mississippi Valley Railroad Company, and by an interchange arrangement was carried over and delivered to the defendant, which issued its bill of lading, picked up the car, and carried it to Weaver's Spur. When the car arrived at its destination, certain portions of the shipment were missing, and this suit is brought to recover the value of the lost articles. From a judgment against it for $150, defendant has appealed.

OPINION.

We find no error in the judgment. The testimony shows beyond question that the missing items of freight were loaded on a flat car and that they were lost or removed before the car reached the place of delivery. Defendant contends, first, that the car was not properly loaded, in that the items lost should have been put in wooden boxes, securely fastened and nailed to the floor of the car. Under Consolidated Freight Classification rules, freight carried in carload lots and at carload rates must be loaded by the shipper, which was done in this case. Section 4 of said rules reads as follows:

"When articles are loaded on open cars small detachable parts must be removed and placed in wooden boxes or secured within the article. Boxes must be encircled at ends with iron straps and securely attached to the article or to floor of car. Such boxes must be specified on shipping orders and bills of lading. Fragile parts not detached must be protected."

Among the articles shipped, there were a great many which should have been placed in wooden boxes, or secured within the articles, and while it may be true that some of the lost articles were not properly secured, yet the lost items, for which plaintiffs contend that the defendant should pay, were not such, we think, as should have been enclosed in wooden boxes. They were 4-inch Hughes tool joints, made of iron, and weighed 60 pounds each. They were not such articles as are properly denominated "small detachable parts;" they were heavy, not fragile, or easily lost. Besides, they were secured and protected in the best and most practical manner. On the flat car, and as part of the shipment, there was a steam boiler 15 feet long, with a fire box 5 feet long, 4 feet wide, and about 4 feet high. The tool joints were all placed within this fire box, and the door closed and securely fastened with wire, so that it could not come open. The bottom of this fire box door was approximately 2 feet above the floor, and the tool joints and other articles placed therein about half filled the box, so that, if the door had come open, the articles, heavy as they were, would have fallen out. The fire box had no bottom, and the articles lay on the floor of the car. There was a space of some 6 inches under the sides of the boiler through which the tool joints might have rolled out, but that space was closed by timbers securely nailed to the floor. The missing articles could not have been accidentally lost through the ordinary movement of the car. When the car arrived at Weaver's Spur, after some four or five days in transit, the wire which fastened the fire box door had been broken loose and the joints were missing. No one knows what became of them.

Under article 2754 of the Civil Code, carriers are liable for the loss of things intrusted to their care, unless they can prove that such loss was occasioned by accidental or uncontrollable events. No such proof was offered by defendant.

Defendant makes the further defense that there is no proof that the missing articles were ever delivered to it for shipment. Counsel does not contend that they were not originally loaded on the flat car, but that there is no proof that they were on the car when it was finally delivered to it for carriage.

As stated, the car was loaded at the supply house of the Louisiana Iron & Supply Company, located on the tracks of the Yazoo & Mississippi Valley Railroad Company, and, through an interchange arrangement not explained, was carried to defendant's yards. Mr. Pine, who is employed by the Shreveport Joint Car Inspection and Interchange Bureau, inspected the car and found that there were no head blocks to keep the boiler from moving from one side to the other of the flat car, and he ordered the car sent back, so that the boiler might be fastened more securely. Several other bureau inspectors inspected the car and found that there were no head blocks, but approved the loading otherwise. Homer Nicholls, an inspector of the defendant company, saw the car in the junction yards of the company, and said that the car was improperly loaded otherwise; that

some of the machinery, tools, etc., were exposed, but as to this his testimony is contradicted by at least four other inspectors, and we conclude that he was mistaken. Neither one of the five inspectors, nor any one else so far as the record discloses, knew what became of the car after it was ordered back to have the head blocks attached, but the testimony shows that the car was later delivered to the defendant company, inspected by its agent, who accepted it, and a bill of lading was issued. The defendant's inspector, who last examined the car and accepted it, does not state that the door to the fire box which contained the tool joints was open, or that the wire securing it had been broken, or that the articles could have rolled out. But counsel say that they could have been taken out or lost in the yards. That is possible, of course, but in view of the fact that the car was finally inspected and accepted by one of defendant's agents, and that there was no suggestion that the shipment had been tampered with at that time, it seems reasonable to conclude that it was in the same condition then that it was when it left the place where it was loaded.

The testimony satisfies us that the goods were delivered to defendant. They were lost, and defendant has failed to account for the loss. It must respond for their value, which is proved to be $150.

The judgment appealed from is therefore affirmed, with costs in both courts.